# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D23-1413
Lower Tribunal No. 2021-CA-009876-O

_____

PHENGSANITH PRADAXAY,

Appellant,

v.

JAMES ERASMUS KENDRICK, IV, M.D., FLORIDA HOSPITAL MEDICAL GROUP, INC.,
d/b/a ADVENTHEALTH MEDICAL GROUP GYN ONCOLOGY AT ORLANDO, and
ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a ADVENT HEALTH ORLANDO,

Appellees.

_____

Appeal from the Circuit Court for Orange County.
Jeffrey L. Ashton, Judge.

May 17, 2024

TRAVER, C.J.

Phengsanith Pradaxay appeals the trial court's dismissal of her complaint against, among others, James Erasmus Kendrick, IV, M.D., with prejudice for failing to comply with certain statutory presuit requirements applicable to medical malpractice actions under chapter 766, Florida Statutes.[1] We have jurisdiction over

_____

[1] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

this final order.[2] *See* Fla. R. App. P. 9.030(b)(1)(A). Because Pradaxay complied with her presuit obligation to submit a corroborating expert affidavit by a doctor with the same specialty, we reverse.

Before filing suit for medical malpractice, a prospective plaintiff must conduct a statutory presuit investigation. This investigation determines whether the prospective plaintiff has "reasonable grounds to believe" that a prospective defendant provided negligent care or treatment that caused injury to him or her. *See* § 766.203(2)(a)–(b), Fla. Stat. (2021). As part of this process, a prospective plaintiff must submit a "verified written medical expert opinion from a medical expert . . ., which statement shall corroborate reasonable grounds to support the claim of medical negligence." *Id*. § 766.203(2).

The Legislature defines "medical expert" as "a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who meets the requirements of an expert witness as set forth in s. 766.102." § 766.202(6), Fla. Stat. (2021). Section 766.102(5) outlines several qualifications an expert witness must have before he can testify against a specialist about the "prevailing professional standard of care." § 766.102(5)(a), Fla. Stat. (2021). The qualification relevant in this case requires the

---

[2] The trial court dismissed this matter with prejudice because the statute of limitations had run on Pradaxay's causes of action, and she could not amend her statutory presuit compliance.

2

expert witness to "[s]pecialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered." § 766.102(5)(a)1., Fla. Stat. (2021). The trial court determines whether the prospective plaintiff complied with her statutory presuit requirements, and if she did not, it must dismiss her case. *See* § 766.206(2), Fla. Stat. (2021).

Dr. Kendrick is a gynecological oncologist who is board certified in obstetrics and gynecology ("OB-GYN"). Dr. Kendrick attested that gynecological oncologists complete an additional three-to-four-year fellowship after their four-year OB-GYN residency. This training includes basic science research, specialized surgical training, and the treatment and management of gynecological cancers.

Dr. Kendrick saw Pradaxay after she had suffered through years of excessive bleeding. When medication and an ablation procedure failed to resolve the issue, Dr. Kendrick surgically removed Pradaxay's uterus, cervix, ovaries, and fallopian tubes. The bleeding did not stop, and Pradaxay ultimately initiated a presuit medical malpractice investigation against Dr. Kendrick.

As part of this investigation, Pradaxay obtained an affidavit from Martin Gubernick, M.D. Like Dr. Kendrick, Dr. Gubernick is board certified in OB-GYN. Unlike Dr. Kendrick, Dr. Gubernick is not a gynecological oncologist. Dr. Gubernick attested that Dr. Kendrick performed a medically unnecessary surgery that negligently injured Pradaxay.

After Pradaxay filed this lawsuit, Dr. Kendrick moved to dismiss it. He contended Pradaxay failed to comply with her presuit obligations because she had not procured someone from his "same specialty" to support her claims. The trial court conducted an evidentiary hearing. Pradaxay argued that gynecological oncology was a sub-specialty of gynecology, and because Dr. Gubernick had the same specialty of gynecology, she complied with section 766.102(5)(a)1. She highlighted section 766.102(5)'s failure to use "sub-specialty" as support for her position. Pradaxay also filed Dr. Kendrick's deposition testimony to further her argument. In it, he attested gynecological oncology was a sub-specialty of gynecology. He also testified that he viewed Pradaxay's likelihood of having cancer as "low" before he operated, and that the operation disclosed no cancer.

The trial court granted Dr. Kendrick's motion. It reasoned that "specialty" meant "somebody with same educational background [who] works in the same area." And because gynecological oncology and gynecology required "different education, different training, [and] different certifications," dismissal was required. Finally, the trial court found the term "sub-specialty" had no independent legal significance, and the Legislature did not mean to distinguish or exclude it from the statutory reference to "specialty."

We review de novo whether Dr. Gubernick's qualifications satisfied Pradaxay's statutory presuit obligations. *See Morris v. Muniz*, 252 So. 3d 1143,

4

1155–56 (Fla. 2018); *Riggenbach v. Rhodes*, 267 So. 3d 551, 554 (Fla. 5th DCA 2019). The purpose of the presuit process is "the prompt resolution of medical negligence claims." § 766.201(2), Fla. Stat. (2021). The Florida Supreme Court directs us to construe these statutory obligations "in a manner that favors access to courts." *Morris*, 252 So. 3d at 1154 (quoting *Patry v. Capps*, 633 So. 2d 9, 13 (Fla. 1994)).

When interpreting a statute, we follow the supremacy-of-the-text principle. *See Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020). This principle dictates that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Id*. (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). Chapter 766 does not define "specialty," but we can ascertain its meaning by considering its plain and ordinary public meaning at the time of enactment. In doing so, we must consider the term in context, "exhaust[ing] all the textual and structural clues that bear on the meaning of a disputed text." *See Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (internal quotations marks omitted) (quoting *Alachua Cnty. v. Watson*, 333 So. 3d 162, 169 (Fla. 2022)). Typically, the best evidence of what a contested term meant when enacted comes from a dictionary published close to that time. *Id*. at 599.

The Legislature first enacted the "same specialty" requirement in 2013. *See* § 766.102(5), Fla. Stat. (2013). At the time of section 766.102(5)'s enactment, "specialty" was commonly understood to mean "[a] branch of medicine or surgery, such as cardiology or neurosurgery, in which a physician specializes; the field or practice of a specialist." *Specialty*, *American Heritage Dictionary* (2011 ed.). This term's meaning has not since changed. *See Specialty*, *American Heritage Dictionary* (2022 ed.). The 2011 definition of "specialty" is noteworthy because it references the medical specialties of cardiology and neurosurgery. It does not, for example, reference the sub-specialties of cardio-oncology or neuro-oncology. Indeed, the evidentiary record does not support gynecological oncology's classification as its own "branch of medicine or surgery." By Dr. Kendrick's own admission, it is a part of the medical branch of gynecology.

"Sub-," in this context, means a "subdivision," which in turns means "a subdivided part." *Sub-*, *American Heritage Dictionary* (2011 ed.); *Subdivision*, *American Heritage Dictionary* (2011 ed.). A "sub-specialty" is therefore a more limited form of a "specialty," and the terms are readily distinguishable.

Contextually, section 766.102(5)'s reference to "the same specialty" is part of a set of qualifications necessary before an expert witness can testify about the prevailing professional standard of care in medical malpractice actions. *See* §§ 766.202(6), 766.203(2). Nowhere in the operative section does it state, or even

6

suggest, that an expert witness offering this testimony have an identical educational background and work history to a prospective defendant.  If the Legislature wished to require this higher qualification level, it knows how to do so.

Of course, a medical expert witness will not pass muster in a presuit compliance setting if the witness specializes in a branch of medicine or surgery that simply provides "similar treatment to the same areas of the body."  *See Riggenbach*, 267 So. 3d at 555 (plastic surgeon could not offer medical expert opinion against orthopedic surgeon); *Clare v. Lynch*, 220 So. 3d 1258, 1260–62 (Fla. 2d DCA 2017) (podiatrist could not offer medical expert opinion against board-certified orthopedic surgeon).  But this is not the case here.  Dr. Kendrick and Dr. Gubernick specialize in the same branch of medicine, as illustrated by their identical OB-GYN board certifications.

For these reasons, the trial court dismissed Pradaxay's action prematurely. We reverse this decision and remand for further proceedings.

REVERSED and REMANDED.

NARDELLA and BROWNLEE, JJ., concur.

Andres I. Beregovich, of The Beregovich Law Firm, P.A. Orlando, for Appellant.

Christian P. Trowbridge, J. Charles Ingram, and Dinelia Concepcion, of Estes, Ingram, Foels & Gibbs, P.A., Maitland, for Appellees.